UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IN RE: MARQUETTE TRANSPORTATION COMPANY GULF INLAND, LLC | CASE NO. 6:18-CV-01222 LEAD |
| | JUDGE ROBERT R. SUMMERHAYS |
| | MAG. JUDGE PATRICK J. HANNA |

## RULING

Before the Court is a Motion for Summary Judgment [ECF No. 193] filed by Petitioners-in-Limitation, 4-K Marine, LLC and Central Boat Rentals, Inc. (collectively referred to as "Movants"), as owner and operator, respectively, of the M/V MISS ELIZABETH. Pursuant to their motion, Movants seek dismissal of all claims brought against them, asserting "there is no evidence that any act or omission of the MISS ELIZABETH, her crew, captains, owners, or operators caused or contributed to the allision subject of this litigation." The motion is opposed by Claimant John Williams.[1] For the reasons that follow, the motion is DENIED.

## I.
### BACKGROUND

This suit arises out of an allision that occurred near Morgan City, Louisiana on March 22, 2018, when a barge in tow of the M/V RANDY ECKSTEIN—an inland towing vessel owned and operated by Marquette Transportation Company Gulf-Inland, LLC ("Marquette")—collided with a dry dock owned by LAD Services of Louisiana, LLC ("LAD"). On that date, during the early morning hours, the RANDY ECKSTEIN was pushing six loaded barges on the lower Atchafalaya River heading to Victoria, Texas. Due to high water and current conditions, vessels on this route

---

[1] ECF No. 197.

were required by the U.S. Coast Guard's Vessel Traffic System to divert to mile marker 99 of the Intracoastal Waterway, initially heading east, and then to make a "top around" maneuver to head west.[2] Due to the river conditions present that day, the Coast Guard required at least one other tug for assistance. Accordingly, Marquette contacted C&J Marine Services, Inc. ("C&J") to provide an assist tug. C&J assigned the M/V JOSSETT, a push boat whose primary function was to assist other vessels traveling that area of the river. At some point in time, the Coast Guard specified that the river conditions mandated the use of two assist tugs.[3] Accordingly, C&J contacted Movants to provide a second tug, the MISS ELIZABETH.[4]

The captains of the MISS ELIZABETH and the RANDY ECKSTEIN testified that the JOSSETT was in charge of the top around maneuver because it was most familiar with the area and the maneuver.[5] Captain Arcement of the JOSSETT similarly testified that he instructed the other captains as to where and how the top around was to be conducted, but the RANDY ECKSTEIN was in charge of the operation.[6] As the MISS ELIZABETH made her way up the river to the location where the top around was to be performed, Captain Arcement called Captain LeBeouf of the MISS ELZABETH and instructed Captain LeBouef as to what his job would be during the maneuver.[7] Captain Arcement instructed Captain LeBeouf that his job was to push on the starboard bow lead barge of the RANDY ECKSTEIN tow until the flotilla was caught by the current.[8] Once the flotilla was properly positioned in the current, the MISS ELIZABETH was to

---

[2] A "top around" is a 180-degree turn. ECF No. 197-4 at 1, ¶ 2.
[3] Claimant John Williams contends the Coast Guard specified that two assist tugs would be required "well before the day of the accident at issue in this case." *Id.* at 2, ¶ 6.
[4] *See id.* at 1-2, ¶¶ 1-6.
[5] ECF No. 197-1 at 57-58, 139, 178; ECF No. 193-5 at 2-3, 5-6.
[6] ECF No. 193-4 at 4-6, 24-25, 30.
[7] ECF No. 197-1 at 62.
[8] ECF No. 193-3 at 6-7, 24, 27, 32; ECF No. 193-4 at 7-8, 16-18; ECF No. 193-5 at 20-21, 23, 25, 35.

disengage.[9] The JOSSETT's role was to push against the RANDY ECKSTEIN's port stern barge, thus acting as a pivot point for the RANDY ECKSTEIN flotilla as it turned.[10] Once the flotilla was in the current, the RANDY ECKSTEIN was to move forward in a westerly direction toward the Intracoastal Waterway.[11]

At approximately 4:57 a.m., the RANDY ECKSTEIN advised that it was ready, and either the captain of the JOSSETT or the RANDY ECKSTEIN gave the instruction to the MISS ELIZABETH to begin pushing.[12] At some point during the maneuver, Captain LeBeouf noticed the flotilla was heading more westward than desired toward the LAD docks and so he radioed the captain of the RANDY ECKSTEIN to warn him.[13] Around the same time, Captain LeBeouf became aware that the MISS ELIZABETH was in danger from the current, so he backed away from the flotilla.[14] At approximately 5:01 a.m., the starboard lead barge of the RANDY ECKSTEIN flotilla allided with the side of the LAD drydock.[15] John Williams, an LAD employee who was sleeping in an LAD vessel, alleges the allision caused him to be thrown from his bunk and slammed to the floor.[16]

Thereafter, each vessel owner filed suit for exoneration from, or limitation of liability. The three suits were subsequently consolidated. Movants 4-K Marine and Central Boat Rentals, as owner and operator of the MISS ELIZABETH, now seek a judgment exonerating them from liability and dismissing with prejudice all claims brought against them. Claimant John Williams opposes the motion.

---

[9] ECF No. 193-5 at 48; ECF No. 193-3 at 7.
[10] ECF No. 197-4 at 3, ¶ 12; ECF No. 193-4 at 5.
[11] ECF No. 193-3 at 8.
[12] ECF No. 197-4 at 4, ¶ 14; ECF No. 193-3 at 26; ECF No. 193-4 at 27; ECF No. 193-5 at 25, 41.
[13] ECF No. 197-4 at 4-5, ¶¶ 16, 18.
[14] *Id.* at ¶ 17.
[15] *Id.* at 5, ¶ 20.
[16] ECF No. 53 at 5.

## II.
### STANDARD OF REVIEW

"Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits."[17] A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[18] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[19] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[20]

The opposing party may not create a genuine dispute simply by alleging that a dispute exists. Rather, the opponent must cite "to particular parts of materials in the record," or show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[21] When reviewing a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving

---

[17] *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989); *see also Hulsey v. State of Tex.*, 929 F.2d 168, 170 (5th Cir. 1991).
[18] FED. R. CIV. P. 56(a).
[19] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[20] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[21] FED. R. CIV. P. 56(c)(1); *see also id.* at (c)(3) (the court need only consider the cited materials, although it is permitted to consider other materials in the record as well); *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006) (Rule 56 does not require the court "to sift through the record in search of evidence to support a party's opposition," and a "failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists.").

party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[22] Credibility determinations, assessments of the probative value of the evidence, inferences drawn from the facts and the like are not to be considered on summary judgment, as those are matters to be decided by the factfinder at trial.[23]

### III.
### APPLICABLE LAW

The Limitation Act restricts financial liability of a vessel owner to the value of the vessel and its freight when a vessel is involved in an accident caused without the vessel owner's privity or knowledge.[24] In a limitation proceeding, the claimant bears the initial burden of proving negligence or unseaworthiness; if the claimant is successful, the vessel owner must then show it lacked privity or knowledge of the condition.[25] A shipowner free from fault is entitled to exoneration from liability.[26] To state a claim in tort under maritime law, a claimant must demonstrate: (1) a duty was owed; (2) breach of that duty; (3) injury; (4) a causal connection between the conduct and the injury; and (5) that the resultant harm was reasonably foreseeable.[27]

Generally, an assist tug has a duty to "promptly execute the order of the tow's commander."[28] Stated differently, "assist tugs have a duty 'to follow the orders of others rather

---

[22] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001).
[23] *See e.g. Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 478 (5th Cir. 2006); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[24] 46 U.S.C. § 30505; *see also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001).
[25] *Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976); *Petition of Kristie Leigh Enterprises, Inc.*, 72 F.3d 479, 481 (5th Cir. 1996). "'Privity or knowledge' implies some sort of 'complicity in the fault that caused the accident.'" *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991) (quoting *Nuccio v. Royal Indem. Co.*, 415 F.2d 228, 229 (5th Cir. 1969)). "'[P]rivity or knowledge' has no fixed meaning." *Id.* "Knowledge or privity of any fact or act causing the accident is not enough for denial of limitation; it is only knowledge or privity of negligent acts or unseaworthy conditions which trigger a denial of limitation." *Farrell Lines* at 10.
[26] *Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir. 1977); *In re Cent. Gulf Lines, Inc.*, 62 Fed.Appx. 557, *10 (5th Cir. 2003).
[27] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010); *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).
[28] *Bisso v. Waterways Transp. Co.*, 235 F.2d 741, 746 (5th Cir. 1956).

than taking action on their own.'"[29] Where an assist tug is following orders of the vessel in charge and it carries out those orders without any negligence on its part, it will not be held liable for an allision.[30]

## IV.
### ANALYSIS

Movants assert they are entitled to exoneration and dismissal of all claims brought against them, arguing there is no evidence that any act or omission of the MISS ELIZABETH caused or contributed to the allision. Movants assert the MISS ELIZABETH "followed the instructions of the lead tug(s) to push the starboard bow of the flotilla into the current and then disengage," and "[s]he performed this task satisfactorily and without negligence."[31] Accordingly, Movants contend the MISS ELIZABETH "is absolved from all blame for the allision" in accordance with the "well established case law and the facts of the case."[32] Williams opposes the motion, arguing that there exist genuine issues of material fact regarding the negligence of the MISS ELIZABETH. Specifically, Williams asserts there is a factual issue with regard to whether Captain LeBeouf aborted the maneuver prematurely and whether that action contributed to the allision.[33]

---

[29] *Archer Daniels Midland, Co. v. M/T AMERICAN LIBERTY*, --- F.Supp.3d ---, CV 19-10525, 2021 WL 2621804, at *12 (E.D. La. June 25, 2021) (quoting *In re Can Do, Inc*., CIV.A. 02-067, 2004 WL 2216529, at *9 (E.D. La. Sept. 30, 2004)).
[30] *Moran Towing & Transp. Co. v. Empresa Hondurena de Vapores*, 194 F.2d 629, 632 (5th Cir. 1952); *see also Bisso* at 746; *Archer Daniels Midland* at *12 ("An assist tug may be exonerated from liability provided the tug obeyed all orders and was not guilty of negligence, either in the manner of executing the orders or by participating in an obviously dangerous maneuver.").
[31] ECF No. 193-1 at 14.
[32] *Id.* at 14, 17.
[33] ECF No. 197 at 18. Williams additionally argues various "corporate failures" of Movants preclude summary judgment, such as their failure to provide an experienced crew, their failure to adequately train Captain LeBeouf, the manner in which they dispatched crews to certain jobs, and their failure to enforce their policy of completing a written Job Safety Analysis prior to this particular job. *Id.* at 13-15. Williams also alleges additional negligence on the part of Captain LeBeouf, such as the fact that he had never previously performed a top around maneuver, his failure to insist that the parties delay the maneuver until daylight, his failure to perform a Joint Safety Analysis prior to commencement of the maneuver, and his failure to sound the horn when he saw that the RANDY ECKSTEIN was too close to the LAD dry docks. *Id.* at 16-18.

Again, each captain testified that the MISS ELIZABETH's orders were to push on the starboard bow lead barge of the RANDY ECKSTEIN tow until the flotilla was caught by the current. According to Movants, the MISS ELIZABETH completed pushing the flotilla into the current and then disengaged.[34] According to Williams, Captain LeBeouf "backed off the RANDY ECKSTEIN flotilla before he completed his push because he believed he was going sideways."[35] The Court has thoroughly reviewed the deposition testimony of Captain LeBeouf and agrees there is an issue of material fact with regard to whether Captain LeBeouf successfully executed his orders. Captain LeBeouf's testimony is inconsistent with regard to whether he completed his push as instructed, or whether he aborted the operation earlier than planned due to his concern that the MISS ELIZABETH was at risk of capsizing, as she had become caught in the current while performing the maneuver.[36] While Movants urge the Court to rely on those portions of LeBeouf's testimony which they allege "clarify" that he did not prematurely abort his job, such a determination is not appropriate on summary judgment, as it would require a credibility assessment which is a matter reserved for trial.[37]

## V.
### CONCLUSION

As the Court finds there is an issue of material fact with regard to whether the MISS ELIZABETH fully executed her orders (and if so, whether such failure was a proximate cause of the allision), summary judgment exonerating Movants from liability is inappropriate in this matter. Rather, whether the MISS ELIZABETH satisfied her duty of care under the circumstances is a

---

[34] ECF No. 197-4 at 4, ¶ 16.
[35] ECF No. 197 at 18.
[36] *Compare* ECF No. 197-1 at 95-97, 324-25 *with id.* at 284, 327-28. While these inconsistencies are perhaps merely the use of imprecise language, the Court cannot make such a finding on summary judgment.
[37] ECF No. 198 at 8-10.

factual issue that must be resolved by the factfinder at trial. Accordingly, the motion for summary judgment [ECF No. 193] is DENIED.

THUS DONE in Chambers on this 14th day of December, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE